**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

**WESLEY E. DAVILA-ROBLES**                                      **PETITIONER**

**v.**                              **NO. 2:23-cv-00017-LPR-PSH**

**E. KESSEL**[1]                                              **RESPONDENT**

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

---

[1]    E. Kessel is now petitioner Wesley E. Davila-Robles' custodial agent and is the proper respondent in this case.

DISPOSITION

In this case, filed pursuant to 28 U.S.C. 2241, petitioner Wesley E. Davila-Robles ("Davila-Robles") maintains that the Federal Bureau of Prisons ("BOP") has mistakenly determined he is ineligible to earn any First Step Act ("FSA") programming credits. It is recommended that this case be dismissed without prejudice because his effort to exhaust his administrative remedies is on-going.

The record reflects that in 2019, Davila-Robles was convicted in the United States District Court for the District of Puerto Rico of having violated 21 U.S.C. 841(a)(1) and (b)(1)(A) ("841") and 18 U.S.C. 924(c)(1)(A) ("924"). Respondent E. Kessel ("Kessel") represents, and the undersigned accepts, that Davila-Robles was sentenced to fifty-seven months imprisonment for having violated section 841 and sixty months imprisonment for having violated section 924, the terms of imprisonment to be served consecutively.

Davila-Robles entered BOP custody and came to be housed at the BOP facility in Forrest City, Arkansas. He eventually learned that he could not earn any FSA programming credits as a result of his convictions including one for having violated section 924.

Davila-Robles commenced the case at bar by filing a petition pursuant to 28 U.S.C. 2241. In the petition, he maintained that the BOP has mistakenly determined he is ineligible to earn any FSA programming credits because his convictions included one for having violated section 924. It is his contention that he should be able to earn the credits for the portion of his sentence attributable to his violation of section 841. He asked that he be awarded, or otherwise be entitled to earn, the credits for the section 841 portion of his sentence.

Davila-Robles acknowledged in his petition that he did not exhaust his administrative remedies before filing the case at bar. He maintained, though, that his failure to do so should be excused for the following reasons:

> Davila asserts he has made every effort to exhaust the prison[']s grievances that were made available to him but has been forced to start the process over because the prison refuses [to] answer his timely grievances, and has requested he start over due to a change in prison personnel and administrators.
>
> Davila asks this court to waive the P.L.R.A. exhaustion requirement under the futility doctrine analysis because this issue is strictly a matter of law-statutory interpretation issue of which the prison is without the authority to decide.

See Docket Entry 1 at CM/ECF 2.

Kessel filed a response and asked that the petition be dismissed. Kessel offered two reasons why, one of which is that Davila-Robles failed to exhaust his administrative remedies before filing the case at bar.

Davila-Robles thereafter filed a reply in which he maintained that he made reasonable efforts to exhaust his administrative grievances before filing the case at bar, and he should not be penalized for the prison's failure to respond. In support of his assertion, he alleged the following:

> Davila-Robles has made multiple attempts to exhaust his administrative grievances with the prison but has met with resistance at every stage. The prison has now, for the third time, asked him to start his grievance process over because the prison has either not addressed, responded to, or lost his previous submissions. ... Through no fault of his own, Davila-Robles is trapped in an endless maze of impediments because he cannot advance his grievance exhaustions to the next level without first being served with a response at the current level. In this way, the prison has kept him in abeyance from fully exhausting despite having endured the timeframe to have completed all 4 stages under normal circumstances.

> The prison's/BOP policy, 1330.18, sets forth an exemption to prisoner exhaustion that provides when a prisoner does not receive a response at any level within the timeframe to be served, he is to consider 'no response' as a rejection. Davila-Robles relies upon this provision here. And since he can go no further without the requisite response, he considers his grievance issue waived and fully exhausted thus satisfying the mandates of the PLRA.

See Docket Entry 9 at CM/ECF 2.

4

The undersigned reviewed Davila-Robles' reply and the exhibits he offered in support of his reply. The undersigned then asked Kessel to file a rebuttal in which he addressed Davila-Robles' assertion of waiver.

Kessel then filed a rebuttal in which he addressed Davila-Robles' assertion of waiver. In the rebuttal, Kessel maintained he following:

> Davila-Robles claims that his efforts to exhaust his administrative remedies has been frustrated by BOP's failure to respond to his filings. However, he acknowledges that ... the absence of a timely response is treated as a denial. A printout of the administrative remedy requests is attached as Respondent's Exhibit 2. The printout shows three remedy requests. See Respondent's Exhibit 2, p. 2. The first two requests pertain to disciplinary proceedings that are not part of the claim raised by Davila-Robles in his petition. ... The third request listed is a request for remedy associated with the claim in the petition. ... However, the request was received by the warden on May 4, 2023. ... As a result, the administrative-remedy process is still ongoing as to Davila-Robles's request. The documentation from BOP indicates that Davila-Robles is aware of how to utilize the administrative-remedy program, but did not properly initiate the process with regard to the claim raised in his petition until well after the petition was filed. As that process is currently ongoing, Davila-Robles's petition should be dismissed.

See Docket Entry 14 at CM/ECF 3.

The prior submission of disputes to an administrative agency is "common to our law." See Mason v. Ciccone, 531 F.2d 867, 870 (8th Cir. 1976). The practice promotes and permits the following:

(1) the development of the necessary factual background upon which the claim is based; (2) the exercise of administrative expertise and discretionary authority often necessary for the resolution of the dispute; (3) the autonomy of the prison administration; and (4) judicial efficiency from the settlement of disputes at the prison level.

See Id. The proper exhaustion of remedies means using all of the steps the administrative agency provides and doing so properly. See Woodford v. Ngo, 548 U.S. 81 (2006); Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

The BOP has a four-step administrative grievance process.[2] The petitioner challenging his entitlement to FSA programming credits must first use the process, and use it completely, before moving on to federal court. See Orasco v. Yates, No. 2:22-cv-00156-BSM-ERE, 2002 WL 18027627 (E.D. Ark. Dec. 12, 2022), report and recommendation adopted, No. 2:22-cv-00156-BSM, 2022 WL 18027631 (E.D. Ark. Dec. 30, 2022); Adams v. Hendrix, No. 2:19-cv-00038-KGB-BD, 2019 WL 7631401 (E.D. Ark. May 20,

---

[2]     The BOP's four-step administrative grievance process is as follows:

(1) an attempt at informal resolution with prison staff; (2) submission of a formal grievance to the Warden, on form BP-9, delivered to the institution staff member designated to it; (3) an appeal of an unfavorable Warden's decision to the appropriate Regional Director, on form BP-10; and (4) an appeal of an unfavorable Regional Director's decision to the General Counsel, on form BP-11. See 28 C.F.R. 542.13–542.18.

See Orasco v. Yates, No. 2:22-cv-00156-BSM-ERE, 2002 WL 18027627, 3 (E.D. Ark. Dec. 12, 2022), report and recommendation adopted, No. 2:22-cv-00156-BSM, 2022 WL 18027631 (E.D. Ark. Dec. 30, 2022).

2019), report and recommendation adopted, No. 2:19-cv-00038-KGB, 2020 WL 365417 (E.D. Ark. Jan. 22, 2020). Once the petitioner arrives in federal court, it must be determined whether he used the process completely; if he did so, only then may his claim be considered on the merits. See Terry v. Dycus, No. 2:19-cv-00134-DPM-JTR, 2020 WL 8182183 (E.D. Ark. Dec. 11, 2020), report and recommendation adopted, No. 2:19-cv-00134-DPM, 2021 WL 149268 (E.D. Ark. Jan. 15, 2021).

Here, Davila-Robles admits that he did not completely use the BOP's four-step administrative grievance process before filing the case at bar. It cannot be said, then, that he exhausted his administrative remedies. The only question is whether his failure to do so should be excused and his claim be considered on the merits.

The exhaustion requirement may be excused if the petitioner can show that requiring him to exhaust his administrative remedies would be futile. See Lueth v. Beach, 498 F.3d 795 (8th Cir. 2007).[3] For example, in Tensley v. Outlaw, No. 2:10-cv-00014-BD, 2010 WL 2671782 (E.D. Ark. July 2, 2010), a petitioner's failure to exhaust was excused because he was near the conclusion of his sentence and lacked sufficient time to exhaust.

---

[3]    In Lueth v. Beach, the Court of Appeals observed that jurisdiction to decide a petitioner's challenge to his sentence was not affected by his failure to exhaust because the exhaustion requirement was judicially created, not jurisdictional.

Davila-Robles maintains that requiring him to exhaust his administrative remedies would be futile. He so maintains for two reasons: first, prison officials have refused to answer his grievances and have asked him multiple times to re-start the grievance process, and second, this case involves only legal issues.

The undersigned is not persuaded that requiring Davila-Robles to exhaust his administrative remedies would be futile. The undersigned so finds for the reasons that follow.

First, Davila-Robles started the administrative grievance process by seeking an informal resolution of his FSA challenge. Unfortunately, he had to re-start the process more than once, his most recent effort appearing to be when he submitted a Documentation of Informal Resolution Attempt on April 11, 2023. See Docket Entry 9 at CM/ECF 7. When the informal resolution attempt produced no benefit, he appears to have submitted a Request for Administrative Remedy on April 24, 2023. See Docket Entry 9 at CM/ECF 8. Kessel did not receive the Request for Administrative Remedy until May 4, 2023. See Docket Entry 14, Exhibit 2 at CM/ECF 2. There is nothing to suggest that the Request for Administrative Remedy has been resolved, or that Davila-Robles has completed the remaining steps in the process.

Given the facts outlined above, the undersigned agrees with Kessel that the administrative grievance process is still on-going, and Davila-Robles has steps left to take in completely exhausting his remedies. The process should not be short-circuited at this juncture as the prior submission of disputes to an administrative agency serves a number of vital interests.

Second, the undersigned assumes, without deciding, that the exhaustion requirement may be excused if a case involves purely a legal issue. The case at bar, though, involves more than a purely legal issue, and a just resolution of the issue in this case undoubtedly requires the development of the factual background and the exercise of the BOP's administrative expertise. Moreover, the undersigned is cognizant of the autonomy of prison officials and has no desire to undermine the administrative grievance process.

Davila-Robles has failed to show that requiring him to exhaust his administrative remedies would be futile. He must do so before his claim can be considered.

It is for the foregoing reasons that this case should be dismissed. It is recommended that the case be dismissed without prejudice, all requested relief be denied, and judgment be entered for Kessel.

DATED this 31st day of May, 2023.

_____
UNITED STATES MAGISTRATE JUDGE